Michael McShane (SBN 127944)
Ling Y. Kuang (SBN 296873)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com

*Attorneys for Plaintiff and the Proposed Class*
*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA PUNTILLO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL TRAVEL NETWORK LLC,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Roberta Puntillo, individually and on behalf of all others similarly situated, files this class action against Defendant International Travel Network LLC.

**I.    INTRODUCTION**

1.    This case is a putative class action brought to obtain redress for consumers who have been harmed by Defendant's use of unfair, unlawful, and/or fraudulent business practices in the marketing and sale of its Travel Care Service (the "Service"). Defendants' agents marketed the Service like a comprehensive travel insurance product that would allow flexible exchanges and refunds. But when Plaintiff attempted to use the Service to obtain a refund, Defendants claimed that she was not entitled to anything beyond those benefits already provided by the airlines.

## II. JURISDICTION, VENUE AND ASSIGNMENT

2. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because (i) there are 100 or more Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (iii) the case has minimal diversity because at least one plaintiff and one defendant are citizens of different states.

3. Venue and assignment are also proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business here, is a licensed California Seller of Travel, and because ASAP Tickets' Rules & Conditions purport to bind Plaintiff and Class Members to bring disputes in this district. Based on information and belief, the Defendant's headquarters are in or around San Francisco, California.

## III. PARTIES

4. International Travel Network LLC is incorporated in Delaware. It is the successor entity to ASAP Tickets, Inc., which was founded by Alex Weinstein in 2001 in San Francisco, California. In 2004, ASAP Tickets was dissolved as a corporate entity and became a brand under International Travel Network.

5. International Travel Network is a wholesale travel agency offering a network of internationally based travel agents who sell discounted travel products. Its primary brands are ASAP Tickets, ASAP Tickets Canada, ASAP Tickets UK, ASAP Tickets Español, ASAP Cars, ASAP Vacations, and Air Concierge.[1]

6. International Travel Network advertises partnerships with 41 airlines, 1,000 experts worldwide, and 50,000 flights sold per month.[2]

7. Plaintiff Roberta Puntillo is a citizen of Wisconsin and resides in Kenosha, Wisconsin.

---

[1] About International Travel Network, https://itncorp.com/about-itn (last accessed Dec. 6, 2024).
[2] International Travel Network, https://itncorp.com/index.php (last accessed Dec. 10, 2024).

1
CLASS ACTION COMPLAINT

8. On or around early January 2022, Plaintiff found the ASAP Tickets website while searching for airline tickets for a planned trip to the Maldives. She had never used their service before. She contacted a travel agent, Nadal, as prompted by the website. Over several days, Nadal worked with Plaintiff to secure airfare for herself, her spouse, and their three children, two of whom were minors at the time.

9. On January 15, 2022, Plaintiff spoke with Nadal to finalize purchase of the tickets. According to phone records provided by Defendant, Plaintiff expressed concern over what would happen if she needed to change her travel plans. Nadal replied that this "would be totally fine. Did I mention to you the protection plan?" Plaintiff replied that she intended to buy trip insurance. Nadal stated that the protection plan "... protects you against general stuff, anything, covid. In case you did the PCR test and anybody of you was positive we give you two options: one we can get you another flight on a different day if it will be possible for you or the 2nd option would be, we can get you refund".

10. While still on the phone with Nadal, Plaintiff received an "Online Authorization Form" via email confirming that the cost of her airfare would be $4,522.00. The email included the statement "**Important information** Since our fares are heavily discounted, they come with certain restrictions. **Your tickets are non-refundable, non-exchangeable, non-reroutable and non-transferable.** If fare rules allow, we will gladly help you do the necessary changes. A USD 250.00 ITN processing fee will be charged together with airline penalties and/or fare difference." (Emphasis and color in original.) Directly below this the email continued: "**Travel Care Service We highly recommend taking advantage of our Travel Care Service! At just USD 449.75 you get extra flexibility when changing dates or canceling your trip!** For more detailed terms and conditions, please refer to "Travel Care Service" section on the form." (Emphasis and color in original.) Plaintiff inquired about the statement that the tickets were "non-refundable, non-exchangeable, non-reroutable and non-

2
CLASS ACTION COMPLAINT

1 transferable" and Nadal said "Yes, that's the general disclaimer from the airline itself. But with the protection plan, when you want to go ahead and exchange the ticket as I mentioned, we will be able to do that… [I]t protects you against anything such as mechanical breakdown of the flight and the flight will not fly, any adverse weather, travel ban, state lockdown, in case any of the borders of any of the countries you are going to get closed, we can go ahead and get you 100% refund back. ... So if anybody has anything happened in this flight, this protection plan will cover it." Plaintiff authorized the purchase of five tickets with Etihad Airways departing from Chicago, Illinois on March 27, 2022, along with Travel Protection Service for each ticket.

11. On January 15, 2022, Plaintiff received a confirmation email confirming her purchase of Travel Care Service for five passengers for $449.75. The first paragraph of the email stated that "As you have discussed with your agent, your Travel Care Service ensures that we will work with the airline on your behalf to get compensation/refund for the specified events that may occur during your trip. Our outstanding experience in working with the airlines allows us to get the refunds covered by the Travel Care Service for you with almost 100% certainty. However, if for any reason we fail to do this, ITN will cover such refunds as your special damages." Nothing in the email indicated that any refund or exchange was subject to any other terms or restrictions.

12. On January 17, 2022, Plaintiff contacted Nadal to inquire about changing a minor portion of their itinerary. Nadal suggested they cancel the entire trip and issue a voucher to use for a second reservation. Plaintiff asked if this would impact the protection available through the Travel Care Service and Nadal assured her that it would not. "Just like this time, you go ahead and call and I'll do everything from my end."

13. On January 17, 2022, Plaintiff received a confirmation email for the second purchase of the Travel Care Service. It contained the same representations as the January 15, 2022, email.

14.     On January 19, 2022, Plaintiff contacted ASAP Tickets and attempted to cancel the Travel Care Service and purchase trip insurance instead. She eventually spoke to Nadal, who once again assured her that the Travel Care Service would allow her to cancel her tickets for a full refund at any time.

15.     On January 26, 2022, Plaintiff was contacted by another agent, Madonna, and repeated her concerns. Madonna stated that "This is actually like a protection plan. It seems that you are a frequent flyer so you know that as per the airline's policy that all the tickets are non-refundable, non-reroutable, non-exchangeable and non-transferable but you do have the protection plan as you've mentioned. That basically will be protecting your own ticket." Plaintiff asked for reassurance that she could get a refund in the event of sickness or other inability to travel. Madonna continued, "[W]hen it comes to the sickness and hospitalization and covid, you can get 100% refund back. … when it comes to covid, sickness or such as thing, you can definitely get a refund back." Plaintiff asked if this covered all members of a party, not just the individual who was sick, and Madonna replied, "It covers all the unforeseen circumstances."

16.     Madonna then emailed her a list of benefits offered by the Travel Care Service. This included "**100**% refund for the [sic] **all the following scenarios:** … Sickness preventing from travel [and] Hospitalisation [sic]." (Emphasis and color in original.) Nothing in the email indicated that any refund or exchange was subject to any other terms or restrictions.

17.     In early February 2022, Plaintiff learned that one of her minor children would need to be hospitalized and undergo major back surgery. The surgery was scheduled for late March 2022, overlapping with their scheduled travel.

18.     On February 9, 2022, Plaintiff called ASAP Tickets and spoke to an employee named Hershel. She stated that she needed to cancel her flight and requested a refund. Hershel forwarded her request to the escalation department.

4
CLASS ACTION COMPLAINT

19. On February 13, 2022, Plaintiff received an email from an employee on the ITN customer service team named Benadette. Benadette stated that the ticket was "not eligible to get a full refund" because of "fare rules and airline policy." Plaintiff explained the situation with her son and the reassurances she had received from Nadal and Madonna. Benadette stated that they "could not override airline policy" but could "request a refund to airline since one of the passenger[s] are having a medical issues" and requested medical documentation to send to the airline.

20. On February 18, 2022, Plaintiff provided ASAP Tickets with a letter from her child's doctor stating that he would be having surgery in March 2022 and the trip the family had booked needed to be canceled.

21. On February 18, 2022, Plaintiff received a call from an employee named Faramis, who told her that the reservation was not eligible for refund because the "insurance does not cover the policy from the airlines." He then told her that she would need to speak to her agent to try and get a refund. Plaintiff spoke to Nadal later that day. He said the fare rules applied "if it was some sort of voluntary exchange which means that you don't feel safe going on the trip if there is no medical reason behind it … Sickness is something, hospitalization is something else and voluntary cancellation is totally something else. So in your case the fare rules will apply indeed, however we have a policy, or terms and conditions as a private contract with Etihad, in case there is a hospitalization of one of the passengers and we have a medical proof such as the one that you sent, different measures will be taken." Plaintiff repeatedly asked why Nadal had previously represented that she could receive a refund for any reason but received no response. However, Nadal "guarantee[d]" Plaintiff would receive a complete refund because of her son's hospitalization.

22. On March 8, 2022, Plaintiff received a flight notification from Etihad about a change to her itinerary. She contacted Nadal asking about the status of her refund. They spoke on the phone the next day and he assured her that he was working on her refund.

5
CLASS ACTION COMPLAINT

23. Plaintiff's dispute was escalated on March 22, 2022. Plaintiff spent two days trying to reach customer service by phone. On March 24, 2022, Plaintiff received an email from an employee named Cara stating that the ticket was non-refundable "per fare rules." Plaintiff repeated that she had purchased the Travel Care Service, that the cancellation was because of her child's hospitalization, and that she had been assured she would receive a full refund if she had to cancel the trip for any reason prior to travel. Nadal replied, again assuring her that he had escalated the case and forwarded the doctor's note.

24. On April 15, 2022, Plaintiff was contacted by an ASAP Tickets employee named Ella. After several exchanges, Ella said she had located the medical documentation regarding Plaintiff's child's surgery and forwarded it to the airline with a refund request. Ella did not respond to Plaintiff's inquiry if this was the first time the letter had been sent to the airlines and denied that their agent had ever promised a refund.

25. On May 12, 2022, Ella forwarded the airline's response denying the refund and repeated that ASAP "cannot override [the airline's] policy and rules."

26. On June 10, 2022, Ella offered Plaintiff a voucher in the amount of the cost of the Travel Care Service. Plaintiff did not accept this offer.

27. On November 3, 2022, Plaintiff contacted Ella with a final request for a full refund. On November 17, 2022, Ella replied for the first time that "we are working on getting an approval to compensate 50% of the total ticket cost" for Plaintiff's child C.J. and was verifying the provided medical documentation. Ella quoted the Travel Care Service policy for travel cancelled due to sickness, not hospitalization, and stated they could only offer a refund for the passenger who was sick. Ella stated that "fare rules" applied to the other four tickets and quoted Ethihad Airways exchange penalties. Plaintiff replied that this was unacceptable.

**IV.    FACTUAL ALLEGATIONS**

28. According to ASAP's Frequently Asked Questions' page, it is "a legitimate company." ASAP supports this claim to legitimacy by citing accreditation by various "headmost organizations" including the American Society of Travel Advisors and the Better Business Bureau. "All of the marks confirm that ASAP Tickets is a 100% legitimate company." [3]

29. ASAP advertises that it is a "a legit travel agency" that "specialize[s] in providing the best flight deals that are not available online, complete with personalized 24/7 customer support." [4] Visitors to the website are directed to call an agent or request a "quote", which consists of granting permission to be contacted by phone by an agent. ASAP's agents are presented as experts with "years of experience" who are "regularly trained on new travel products." [5]

30. In addition to airline tickets, ASAP's website promises "a one-stop solution for your perfect travel arrangement" including deals on hotels, attractions, concierge services, and "travel extras" including "great deals on insurance for every trip … ALL IN ONE PLACE." [6] Additional details of these "insurance" products are not available online.

31. ASAP's Travel Care Service is not insurance. This disclosure is made only after a customer has agreed to purchase the product, on the payment confirmation screen and in the email confirmation. Defendant promises to work with the airline on your behalf to get compensation/refund for the specified events that may occur during your trip. Their outstanding experience in working with the airlines allows them to get the refunds covered by the Travel Care Service for consumers with almost 100% certainty. However, if for any reason they fail to do this, ITN will cover such refunds as consumers' special damages.

---

[3] Why Choose ASAP Tickets?, https://www.asaptickets.com/customer-service/faq (last accessed Dec. 6, 2024).
[4] What Is ASAP Tickets?, https://www.asaptickets.com/about (last accessed Dec. 6, 2024).
[5] Travel Extras, https://www.asaptickets.com/travel-extras (last accessed Dec. 6, 2024).
[6] Id.

7
CLASS ACTION COMPLAINT

32. At no time did Defendant's website, agents or documents state that refunds were dependent on the rules and policies of the airlines.

33. ASAP has a long and well-documented history of over-promising the benefits of its Travel Care Service and refusing to deliver when called to fulfill those promises. When they do provide refunds, it is frequently weeks or months after the fact, or only after customers complain to outside sources such as the Better Business Bureau.







**Initial Complaint**
12/28/2023

**Complaint Type:** Service or Repair Issues
**Status:** Answered

I bought swiss airline round trip ticket ***/*****/*** traveling on 22nd sep returning 22nd Nov. I got sick and canceled flight through ASAP tickets and sent them a medical certificate. Also paid over $250 for care package like an insurance in case I got sick. They are refusing to issue a return ticket as per their care package and trying to charge me a lot of money. Since I bought care package they should provide return ticket free of ost and penalties. I'm a 77 years old citizen they are going to leave me stranded.



**Initial Complaint**
11/17/2023

**Complaint Type:** Service or Repair Issues
**Status:** Answered

This company sold me their travel insurance product (Travel Care Services/ Vacation Planner) twiceonce when I ordered it, another time when I didnt. When I needed to change my travel plans I found out it covers next to nothing. They over charged me thousands of dollars for this useless service. I tried to work this situation out with them but they made me run around in circles. Terrible loss of time and money,



**Initial Complaint**
08/30/2023

**Complaint Type:** Product Issues
**Status:** Answered

asap agents are thieves and sell you tickets and travel insurances they know you cannot use. I bought 3 tickets for my kids and I to go to *******. I bought the travel insurance because they said I could use it in case of travel changes. WHen I got sick in ******* and could not travel, I called and advised them of it. I also went to Iberia. ****** said that **** sold me the travel insurance knowing that Iberia does not accept it. They basically are lying to customers and stealing their money. I was stuck in ******* for weeks, asap could not find me any travel date for at least 2 months and wanted to charge me the initial flights costs just for the fare difference. I was forced to buy brand new tickets to get back to the US. I would like my full return flight and travel insurance refunded asap. I will get my lawyer involved if needed. This is wrong and they need to be stopped.

**Initial Complaint**
08/29/2023

**Complaint Type:** Product Issues
**Status:** Answered

I had purchased a ticket from Asap tickets on Jul 7 for Aug 22nd. I had informed the agent that I wanted a ticket that did not require transit ***** going from *****, ******* to *******, ******. The agent had assured me that the ticket provided was good to go with as she already confirmed with the airline.during the purchase, the agent persistently insisted that I purchase their Travel care coverage and that if anything happens and we are unable to travel with the ticket, we would be refunded. on the day of the travel, passenger was not allowed to board the airline because he needed transit ***** I have now asked for a refund of my money and they company keeps pushing me back and forth and saying the ticket was non-refundable.They did an investigation and found that the agent did say to me that the insurance would cover me if anything happened and I am not able to travel (customer service agent I spoke to said the conclusion was agent error and he sent the details of the investigation to me). Because of the delay from their end, I went ahead and purchased a ticket before the prices skyrocketed, now I am asking them for my refund and they are offering to change the date of the old ticket. I have told them I cannot accept that offer as I have already spent over ***** cad purchasing a new ticket. I just want my money back as their agent informed me severally that I would get back

> **Initial Complaint**
> 05/03/2023
>
> **Complaint Type:** Product Issues
> **Status:** Answered
>
> \*\* Jan 1, 2023 I booked tickets through ASAP Tickets for \*\*\*\*\*\*\*\*\*\* Airlines. The tickets are for my mother and my brother. I felt needing help from a travel agent because I thought they were experts and I needed something special for the situation since during the pandemic finding single airline flights to and from \*\*\*\*\*\*\*\*\*\*\*\*\*\* became difficult and Delta does not really fly to \*\*\*\*\*\*\*\*\*\*\*\*\*\* anymore. My mom needed a ticket coming back from \*\*\*\*\*\* to the \*\* and my brother planned to come with her for a vacation and so he needed a round trip between \*\*\*\*\*\* and the \*\*. At the time of booking the agent who helped me was eager to help me find the cheapest price which I was not looking for because I needed something specific. And so the agent found flights. I WAS NOT AWARE that the flights were booked at the lowest tier saver and super saver (non changeable non refundable) because I was looking at the flights too and the prices he offered were more expensive than the cheapest tier he actually booked in. There was no way to see what they actually paid for the tickets and I understand thats how they make money. He offered a travel protection for easy refund for whatever reason, he said and I purchased so in case my mother or brother gets sick and not able to make the trip. I thought it was the same travel protection that the airline actually offers, ALLIANZ. He even sent a confirmation. So close to the date of the flight my brother got ill with \*\*\*\*\* and complicated his lungs. I contacted ASAP Tickets right away because he will not make it, his \*\*\*\* was put on hold and he didnt want to travel if he would travel alone. So I am trying to file for the refund through the insurance but apparently the insurance was not an actual insurance. I find it fraudulent to offer an insurance that is not an insurance but a fee for them in case they need to change or try to refund a non refundable ticket, now they kept sending updates that the airline is taking time to respond.[7]

## V.    CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this nationwide class action on behalf of herself and on behalf of others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

35.     The Nationwide Class that Plaintiff seeks to represent is defined as follows:

All customers of ASAP Tickets who are citizens or legal residents of the United States who 1) purchased the Travel Care Service, 2) were unable to use their purchased travel products for reasons purportedly covered by the Travel Care Service and 3) were denied reimbursement.

36.     Excluded from the Class is the Defendant, and all officers, directors, employees, or agents of the Defendant.

37.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

---

[7] ASAP Tickets: Complaints, Better Business Bureau, https://www.bbb.org/us/ca/burlingame/profile/travel-agency/asap-tickets-1116-72752/complaints (last accessed Dec. 6, 2024).

38. <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): Class Members are so numerous that joinder of all members is impracticable. Plaintiff does not know the exact size of the proposed Class, but as ASAP Tickets claims over 800,000 flights booked, believes that the Class encompasses at least thousands of individuals. Class Members' identities can be readily determined from Defendant's records and the Class Members' own records of their travel arrangements and cancellations.

39. <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of fact common to the Class exist and predominate over any questions affecting only individual Class Members. These common questions include:

a) The nature, scope and operations of the wrongful practices of Defendant;

b) Whether Defendant's advertising, marketing, product packaging, and other promotional materials were untrue, misleading, or reasonably likely to deceive;

c) Whether Defendant knew that its representations and/or omissions regarding the Service's coverage were false or misleading, but continued to make them;

d) Whether Defendant's failure to disclose the limits of the Service's coverage was a material fact;

e) Whether, by the misconduct as set forth in this Complaint, Defendant engaged in unfair or unlawful business practices, pursuant to California Business and Professions Code § 17200, et seq.;

f) Whether Defendant's conduct violated the California Consumer Legal Remedies Act;

g) Whether Defendant's conduct violated the California Business and Professions Code § 17500, et seq.;

h) Whether, as a result of Defendant's misconduct as set forth in this Complaint, Plaintiff and the Class is entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief; and

i) Whether Defendant has acted on grounds generally applicable to the Class, making injunctive relief appropriate.

40. <u>Typicality</u>, Fed R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because all members of the Class were injured by the same wrongful practices of Defendant as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the claims of the Class members, and are based on the same legal theories.

41. <u>Predominance</u>: Defendant engaged in a common course of conduct toward Plaintiff and other Class Members. The common issues arising from Defendant's conduct predominate over any individualized issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy. Defendant's conduct applies to and affects Class Members uniformly and Plaintiff's challenge to those actions hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

42. <u>Adequacy of Representation</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff has no conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is averse to the other Class Members and the infringement of rights and the damages Plaintiff sustained are typical of those of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

43. <u>Superiority</u>, Fed. R. Civ. P. 23(b)(3): Class-wide litigation is an appropriate method for fairly and efficiently adjudicating the claims involved in this case. Class treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims

by certain Class Members, who could not individually afford to litigate a complex claim against large corporations like Defendant. Further, even for those Class Members who could afford to litigate such a claim, such an approach would be economically impractical for the Class Members and impose a burden on the courts.

44. Litigating the claims brought herein by a class action is manageable. Defendant's uniform conduct, the consistent provisions of relevant legal doctrine, and the ascertainable identities of Class Members, demonstrates that prosecuting this lawsuit as a class action would entail no significant manageability problems. Adequate notice can be given to Class Members directly by using information maintained in Defendant's records.

45. Defendant has acted or failed to act on grounds generally applicable to the Class, so class certification and resulting relief are appropriate on a class-wide basis.

## VI.  CLAIMS FOR RELIEF

### COUNT I
### California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

46. Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

47. Plaintiff brings this cause of action individually and on behalf of the Class.

48. Defendant has violated California Business and Professions Code § 17200 by engaging in unfair, unlawful, and/or fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue, or misleading advertising as set forth in this Complaint.

49. Defendant's practices are likely to deceive, and have deceived, members of the public.

50. Defendant knew, or should have known, that its misrepresentations, omissions, failure to disclosure and/or partial disclosures omit material facts and are likely to deceive a reasonable consumer.

51. Defendant continued to make such misrepresentations despite the fact it knew or should have known that its conduct was misleading and deceptive.

52. By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

53. Plaintiff and all members of the Class suffered injury in fact as a result of Defendant's unfair methods of competition. As a proximate result of Defendant's conduct, Plaintiff and members of the Class were exposed to these misrepresentations and omissions, purchased the Service in reliance on these misrepresentations, and suffered monetary loss as a result.

54. Plaintiff, individually and on behalf of the Class, seeks an order of this Court against Defendant awarding restitution, disgorgement, injunctive relief and all other relief allowed under § 17200, *et seq.*, plus interest, attorneys' fees and costs.

## COUNT II
### California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

55. Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

56. Plaintiff brings this cause of action individually and on behalf of the Class.

57. Defendant is a California company disseminating advertising from California throughout the United States.

58. Defendant has engaged in a systematic campaign of advertising and marketing its travel products as comprehensive and supported by expert agents who provide personalized customer service. In connection with the sale of its goods and services, Defendant disseminated or caused to be disseminated false, misleading, and deceptive advertising regarding the availability of travel insurance and the scope of coverage provided in the place of insurance. Defendant's agents sold a Service that Defendant knew was not insurance, promised broad coverage in writing and even broader coverage

orally, and refused to deliver on those promises. Defendant's failure to disclose that refunds under the Service were dependent on the rules and terms of the airlines was a material omission.

59. When Defendant disseminated the advertising described herein, it knew, or by the exercise of reasonable care should have known, that the statements concerning its Service were untrue or misleading, or omitted to state the truth about the scope of the coverage provided, in violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.

60. As a proximate result of Defendant's conduct, Plaintiff and members of the Class were exposed to these misrepresentations, omissions and partial disclosures, purchased the Service in reliance on these misrepresentations, omissions and partial disclosures, and suffered monetary loss as a result. They would not have purchased the Service, or would have paid significantly less for it, had they known the truth regarding the limited scope of its coverage.

61. Defendant made such misrepresentations despite the fact that it knew or should have known that the statements were false, misleading, and/or deceptive.

62. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

63. Pursuant to Business and Professions Code §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ the above-described practices in advertising the sale of the Service.

64. Likewise, Plaintiff seeks an order requiring Defendant to make full corrective disclosures to correct its prior misrepresentations, omissions, failures to disclose, and partial disclosures.

65. On information and belief, Defendant has failed and refused, and in the future will fail and refuse, to cease its deceptive advertising practices, and will continue to do those acts unless this

Court orders Defendant to cease and desist pursuant to California Business and Professions Code § 17535.

66. Plaintiff, individually and on behalf of the Class, seeks restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

**COUNT III**
**California Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750, *et seq.***

67. Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

68. Plaintiff brings this cause of action individually and on behalf of the Class.

69. The acts and practices described in this Complaint were intended to result in the sale of a service, specifically the Travel Care Service, in a consumer transaction.

70. Defendant's acts and practices violated, and continue to violate, the CLRA in at least the following respects:

a) Representing that the Service has characteristics, uses, or benefits that it does not have, in violation of California Civil Code § 1770(a)(5); and

b) Advertising the Service with intent not to sell it as advertised, in violation of California Civil Code § 1770(a)(9).

71. Defendant's deceptive acts and practices caused Plaintiff and Class Members to purchase a service that did not provide the advertised benefits, and to avoid purchasing other services that would have provided those benefits. Plaintiff and Class Members were then further harmed when they did not receive the expected benefits.

72. At this time, Plaintiff disclaims any claim for damages under the CLRA but, pursuant to California Civil Code § 1780, seeks an order of this Court enjoining Defendant from continuing to engage, use, or employ any act prohibited by California Civil Code § 1770 et seq.

73. Plaintiff expressly reserves the right to amend this Complaint to seek damages.

16
CLASS ACTION COMPLAINT

# COUNT IV
# Unjust Enrichment

74. Plaintiff repeats and realleges the allegations set forth above as if fully contained herein.

75. Plaintiff brings this cause of action individually and on behalf of the Class.

76. Defendant has been, and continues to be, unjustly enriched as a result of the acts and practices described in this Complaint and its resulting collection of money from the sale of the Service.

77. Defendant has been further unjustly enriched by its refusal to pay refunds owed to members of the Class under the terms of the Service.

78. Plaintiff, individually and on behalf of the Class, seeks an order of this Court against Defendant ordering disgorgement of Defendant's unjustly acquired profits and other monetary benefits resulting from its unlawful conduct, and seeks restitution for the benefit of the Plaintiffs Class members, in an equitable and efficient fashion to be determined by the Court.

**VII.  REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other Members of the Class, respectfully requests that the Court enter judgment in her favor and against Defendant, as follows:

A. Certifying the proposed Nationwide Class, including appointment of Plaintiff's counsel as Class Counsel;

B. Awarding damages for Plaintiff and the other Class Members for their unreimbursed losses for travel expenses purportedly covered by the Travel Care Service;

C. Ordering Defendant to pay pre- and post-judgment interest on any damages awarded;

D. Awarding costs and attorneys' fees; and,

E. Granting such other or further relief as may be appropriate.

**VII.   DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: December 10, 2024                    Respectfully submitted,

/s/ *Michael McShane*
MICHAEL MCSHANE (SBN 127944)
LING Y. KUANG (SBN 296873)
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-1776
mmcshane@audetlaw.com
lkuang@audetlaw.com

ROBERT K. SHELQUIST*
MEGAN S. VAN DYKE*
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone 612-339-6900
rkshelquist@locklaw.com
msvandyke@locklaw.com

*Attorneys for Plaintiff and the Proposed Class*

**Pro Hac Vice forthcoming*