UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA PUNTILLO,<br><br>                    Plaintiff,<br><br>          v.<br><br>INTERNATIONAL TRAVEL NETWORK,<br>LLC,<br><br>                    Defendant. | Case No.  24-cv-08931-HSG<br><br>**ORDER GRANTING MOTION TO<br>COMPEL ARBITRATION**<br><br>Re: Dkt. No. 53 |

Pending before the Court is Defendant International Travel Network, LLC ("ITN")'s motion to compel arbitration and stay the case, Dkt. No. 53 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court **GRANTS** the motion.

## I.    BACKGROUND

In January 2022, Plaintiff Roberta Puntillo used a website named ASAP Tickets to purchase several airplane tickets for an upcoming family trip. Dkt. No. 1 ("Compl.") ¶¶ 8–10.[1] In addition to the tickets, Plaintiff purchased ASAP Tickets' Travel Care Service. *Id*. According to Plaintiff, ASAP Tickets represented that the Travel Care Service "get[s] you [a] 100% refund back" and would "allow her to cancel her tickets for a full refund at any time." *Id*. ¶¶ 10, 14. In February 2022, Plaintiff informed ASAP Tickets that she needed to cancel her tickets and requested a full refund. *Id*. ¶¶ 17–18. Over the following months, Plaintiff alleges that ASAP Tickets repeatedly denied her requests for a full refund and "denied that [it] . . . had ever promised a refund." *Id*. ¶¶ 19–27. Plaintiff further asserts that "ASAP has a long and well-documented

---

[1] Defendant ITN owns ASAP Tickets. *See* Compl. ¶¶ 4–5.

United States District Court<br>Northern District of California

history of over-promising the benefits of its Travel Care Service and refusing to deliver when called to fulfill those promises." *Id.* ¶ 33.

Based on these allegations, Plaintiff filed this putative class action on behalf of "[a]ll customers of ASAP Tickets who are citizens or legal residents of the United States who 1) purchased the Travel Care Service, 2) were unable to use their purchased travel products for reasons purportedly covered by the Travel Care Service and 3) were denied reimbursement." *Id.* at 11. She brings three claims under California consumer protection statutes—(1) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (2) the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; and (3) the Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750—as well as a claim for unjust enrichment. ITN moves to compel arbitration based on the arbitration provision associated with Plaintiff's purchase. Plaintiff opposes the motion. Dkt. No. 61 ("Opp.").

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, establishes that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid

United States District Court
Northern District of California

2

arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

## III.    DISCUSSION

Defendant argues that Plaintiff agreed to arbitrate this dispute when she purchased tickets through ASAP, which is owned by Defendant.  Plaintiff argues that no agreement to arbitrate was formed as to the Travel Care Services she purchased in conjunction with her ticket purchase, that the arbitration clause is unconscionable, and that it is premature to determine whether she can assert claims on behalf of a class.

### A.    Formation of the Arbitration Agreement

The party seeking to compel arbitration bears the burden of proving the existence of the agreement by a preponderance of the evidence.  *See Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).  In determining whether an agreement was formed, the Court applies "general state-law principles of contract interpretation," without a presumption in favor of arbitrability.  *See Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (quotation omitted).  Under California law, a viable contract requires: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration.  *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).  "[I]f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (applying California law).

Defendant argues that Plaintiff agreed to arbitration by affirming that she had read and agreed to the general terms and conditions contained in the contract for her purchase of airfare. That contract contained an arbitration agreement under which Plaintiff agreed to arbitrate all disputes or claims arising out of or relating to her purchase:

> Disputes.  The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), the Service, or the Website shall be BINDING ARBITRATION administered by the American Arbitration Association.  The one exception to this agreement is that you have the right to bring an individual claim against the Company in a small-claims court of competent jurisdiction.  But whether you choose

United States District Court
Northern District of California

> arbitration or small claims court, you may not under any circumstances commence or maintain against the Company any class action, class arbitration, or other representative action or proceeding. By using the Website or the service in any manner, you agree to the above arbitration agreement . . . This Agreement, and any dispute between you and the Company, shall be governed by the laws of the state of California . . . provided that this arbitration agreement shall be governed by the Federal Arbitration Act. You can decline to arbitrate by filling out an arbitration opt out letter and sending it to our email info@asaptickets.com within 30 days of first accepting these Terms.

*See* Dkt. No. 55-1 at 8.[2]

Defendant contends that any customer who purchases airfare and add-on services like Travel Care Services must proceed through a two-step process to complete a purchase. Mot. at 9. First, a travel agent works with the customer to identify flight details over the phone, as Plaintiff alleges here. *See* Dkt. No. 55-1 ("Pugacovs Decl.") ¶ 3; Compl. ¶ 8. Next, ITN emails the customer a link to an online authorization form ("OAF") on its website to complete their purchase of airfare. *See* Pugacovs Decl. ¶ 3; Compl. ¶ 10. That webpage allows customers to add certain services to their purchase, like Travel Care Services, which have associated Terms and Conditions denoted by a clickable link in blue text. Pugacovs Decl. ¶ 6. Customers must then add their payment information and "click a box confirming that they read, understood, and accepted the General Terms and Conditions" before clicking a "Pay Securely Now" button to complete the transaction. *Id.* ¶¶ 8–9.

Defendant introduces evidence that Plaintiff, like all its customers, went through this process. *See generally id.* She received an email from the ITN travel agent which contained a clickable link to the OAF. *Id.* ¶ 5. Plaintiff added the Travel Care Services Premium Plan to her purchase, entered her payment information, clicked the box affirming that she "read, understood, and accepted" the General Terms and Conditions, and clicked a button to "Pay Securely Now," thus completing her purchase. *Id.* ¶¶ 6–9. Defendant argues that by completing this process to make her purchase, Plaintiff manifested her assent to the General Terms and Conditions, and with them, the agreement to arbitrate. Dkt. No. 62 ("Reply") at 5–6.

---

[2] Unless otherwise noted, all page numbers referenced herein are to the ECF page number at the top of the page.

The Court finds that Defendant has met its burden to prove the existence of an arbitration agreement. Here, the hyperlink to the General Terms & Conditions was "conspicuously distinguished from the surrounding text in bright blue font, making its presence readily apparent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023). And a checkbox to manifest assent with the terms appeared immediately before the customer was required to click a button that says "Pay Securely Now." *Cf. In re Tesla Advanced Driver Assistance Sys. Litig.*, No. 22-CV-05240-HSG, 2023 WL 6391477, at *4 (N.D. Cal. Sept. 30, 2023) (finding "hybrid browsewrap agreements where the terms of the agreement [were] hyperlinked above the [submission] button" were enforceable contracts). This Court recently confronted similar facts and found a valid arbitration agreement. *See Maus, v. Hyundai Motor America*, No. 25-CV-07937-HSG, 2026 WL 974512, at *3 (N.D. Cal. Apr. 10, 2026) (collecting cases).

Plaintiff argues that when she added the Travel Care Services to her purchase, she entered into a separate contract for those services, which she says are not subject to the arbitration agreement contained in the General Terms and Conditions. Opp. at 10–14. She contends that the "existence of two contracts is highlighted by the presentation of the two sets of terms on the purchase confirmation page," *id.* at 12, and reinforced by the fact that the Terms and Conditions applicable to the Travel Care Services do not incorporate the General Terms, *id.* at 13. Plaintiff does not otherwise dispute that she entered into an arbitration agreement under the General Terms and Conditions applicable to her purchase of tickets. She nevertheless argues that further discovery is necessary to determine whether the parties formed an agreement to arbitrate with respect to her purchase of Travel Care Services. *Id*. at 14–15.

Plaintiff's argument ignores Defendant's evidence that Travel Care Services are "not a standalone product" and "can only be added to the purchase of airfare as part of a single transaction." Pugacovs Decl. ¶ 3. She also ignores Defendant's evidence that she entered her payment information once and paid for the Travel Care Services and airfare in a single purchase. *Id.* ¶¶ 3–10; *see also* Dkt. No. 55-2 at 9–10. Plaintiff argues, without citing any competing evidence or testimony, that it is unclear what terms actually appear when a user clicks the blue link to the General Terms and Conditions. Opp. at 14. But as the non-moving party, Plaintiff "must

do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (applying summary judgment standard to motion to compel arbitration). Plaintiff has not met this burden, as she does not introduce competing evidence or deny that she filled out the OAF and assented to the General Terms and Conditions to complete her purchase. *Cf. Bryant v. JPMorgan Chase Bank, N.A.*, 763 F. Supp. 3d 946, 950 (C.D. Cal. 2025) (noting that "Plaintiff does nothing to create a genuine issue of material fact as to the existence of an agreement" where she did "not assert that [s]he did not sign up for" the product and did "not provide[] a sworn affidavit contesting any aspect of [the opposing] declaration"); *Maus*, 2026 WL 974512, at *3 (finding no genuine dispute of material fact where plaintiff "d[id] not introduce *any* competing evidence or even directly deny that he completed the Bluelink enrollment form.").[3] In light of the evidence Defendant has submitted, and Plaintiff's failure to introduce any competing evidence, there are no "genuine disputes of material fact as to whether the parties formed an arbitration agreement." *Hansen*, 1 F.4th at 672.

## B.  Unconscionability

Plaintiff argues that the arbitration agreement is unconscionable and therefore unenforceable. Opp. at 16–20. Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *See Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Procedural and substantive unconscionability "need not be present in the same degree." *Id.* Instead, unconscionability is a "sliding scale" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum*

---

[3] Plaintiff also argues that the Court should "reject Defendant's efforts to gloss over the inconsistencies" in a declaration previously filed on the docket. Opp. at 15 (citing Dkt. No. 24). The Court did not consider that declaration in its review of this motion, because Defendant's newly filed declaration and accompanying exhibits include an unedited version of the OAF— which exactly tracks the version Plaintiff herself filed on the docket, save for certain differences in the parties' redactions of personally identifying information. *Compare* Dkt. No. 55-1 with Dkt. No. 41-3.

6

*Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (Cal. 2012).

              **i.**     **Procedural Unconscionability**

Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114 (quotation omitted). "The threshold inquiry in California's unconscionability analysis is 'whether the arbitration agreement is adhesive.'" *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 113). Here, the arbitration agreement contains an opt-out provision: Plaintiff could have opted out of the arbitration agreement within 30 days by simply emailing an address provided by Defendant in the General Terms and Conditions. Dkt. No. 55-1 at 8. The OAF submitted by both parties shows that Defendant disclosed in the arbitration agreement language itself how to opt out: the document hyperlinks the relevant "arbitration opt out letter" as well as the email address to which it must be sent. *See* Dkt. Nos. 41-3 at 8; 55-1 at 8. The Ninth Circuit has repeatedly held that similar opt-out procedures foreclose claims of procedural unconscionability. *See, e.g.*, *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013). Further, Defendants introduce evidence that Plaintiff did not exercise her right to opt out of the arbitration agreement. Pugacovs Decl. ¶ 11.

Plaintiff nonetheless argues that the arbitration agreement is procedurally unconscionable because it came as a surprise. Opp. at 17–19. She says that the travel agent she spoke with did not draw her attention to the existence of the arbitration agreement, and the confirmation box she clicked to proceed through the online purchase did not either. *Id*. at 17. Plaintiff also contends that the existence of three sets of terms and conditions—for the Travel Care Services, the General Terms and Conditions, and a third set of terms and conditions on Defendant's website—resulted in "contradictory terms[] and ambiguous provisions." *Id.* at 19.

As an initial matter, even Plaintiff does not argue (or aver) that the terms and conditions on Defendant's website are part of her contract. And while the Court agrees that the existence of two sets of terms and conditions (one for the Travel Care Services and a second for the purchase as a whole) could pose some confusion to a customer, the arbitration provision in the General Terms and Conditions is clear and unambiguous, and is not buried in legalese. *See* Dkt. No. 55-1 at 8.

The OAF representing Plaintiff's entire contract is only 10 pages long, and a customer who clicks on the General Terms and Conditions hyperlink would see that its first paragraph is clearly labeled "Disputes." Pugacovs Decl. ¶ 7. The relevant terms are only one paragraph long and contain capitalized text that clearly states that Plaintiff would be subject to "BINDING ARBITRATION." *See* Dkt. No. 55-1 at 8. Considering the totality of these factors, the Court finds a minimal degree of procedural unconscionability, if any.

### ii. Substantive Unconscionability

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019) (quotation omitted). The doctrine "is concerned with terms that are 'unreasonably favorable to the more powerful party,' not just 'a simple old-fashioned bad bargain.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001–02 (9th Cir. 2021) (quoting *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130 (Cal. 2019)). Instead, "the term must be so one-sided as to shock the conscience." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012).

Plaintiff first argues that the arbitration agreement is substantively unconscionable because it requires a customer to initiate litigation against Defendant in California if the arbitration agreement is held unenforceable. Opp. at 19–20. The Court agrees with Defendant that this argument is "logically flawed." Reply at 8. At bottom, Plaintiff urges the Court not to enforce the arbitration agreement, but on the ground that if the Court agrees it is unconscionable and unenforceable, she will have to file suit in federal or state court in San Francisco. The only case she cites for her argument that this forum selection clause is unconscionable is a nonprecedential memorandum disposition, *Newton v. American Debt Services, Inc.*, 549 Fed App'x 692 (9th Cir. 2013). And the Court finds *Newton* distinguishable in any event. There, the Ninth Circuit struck down as substantively unconscionable a forum selection clause for *arbitration*, not a forum selection clause for litigation in the event that the arbitration agreement was held unenforceable. *See Newton*, 549 Fed App'x at 694. The Ninth Circuit found that provision, in combination with several others not present here, rendered the agreement substantively unconscionable and therefore unenforceable.

8

Plaintiff also contends that the arbitration agreement is substantively unconscionable because the terms currently on Defendant's website contain a cost-shifting provision. Plaintiff suggests that the existence of these terms on Defendant's website reflects some uncertainty about which terms applied to her agreement with Defendant. As discussed above, the Court rejects Plaintiff's arguments concerning the applicability of these terms: the Court has found that the terms governing her purchase are contained in the OAF, and those terms do not contain a cost-shifting provision. *See* Dkt. Nos. 55-1, 41-3.

Plaintiff's only remaining argument is that the arbitration agreement is substantively unconscionable because it expressly bars her from pursuing relief on a class-wide basis. Opp. at 20. Plaintiff argues that this class action waiver is unconscionable and unenforceable because it lacks mutuality, citing *Roe v. SFBSC Mgmt., LLC*, No. 14-CV-03616-LB, 2015 WL 930683, at *10 (N.D. Cal. Mar. 2, 2015). Opp. at 20. Defendant responds that the agreement is mutual because following the Supreme Court's decision in *Lamps Plus*, an arbitration agreement only permits class-wide arbitration if it expressly affirms each party's consent to do so. Reply at 10 (citing *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019). The Court agrees. Here, the arbitration agreement is silent as to Defendant's right to pursue relief on a class-wide basis, meaning that Defendant cannot do so. *Lamps Plus*, 587 U.S. at 186 ("Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself."). The Court therefore finds that the class-action bar is mutual. It follows that the class action waiver does not make the agreement substantively unconscionable for lack of mutuality.

### C.    The Agreement Encompasses Plaintiff's Claims

Having determined that a valid agreement to arbitrate exists, the Court considers whether Plaintiff's claims regarding Defendant's services fall within the scope of the agreement. "California has a strong public policy favoring arbitration and, as a result, ambiguities or doubts about the scope of the arbitration provision should be resolved in favor of arbitration." *Duran v. EmployBridge Holding Co.*, 92 Cal. App. 5th 59, 65–66 (2023). The Court finds that Plaintiff's claims are covered by the arbitration agreement. As set out above, the arbitration agreement

United States District Court
Northern District of California

applies to "any dispute or claim arising out of relating to this Agreement . . . the Service, or the Website." Dkt. No. 55-1 at 8. Plaintiff's claims—both statutory and equitable—stem from Defendant's alleged failure to fulfill its promises with respect to its Travel Care Services. Accordingly, the Court finds that Plaintiff's individual claims are subject to arbitration. *See Holl v. United Parcel Service, Inc.*, No. 16-CV-05856-HSG, 2017 WL 11520143 (N.D. Sept. 18, 2017) (finding arbitrable a dispute related to the provision of UPS's charge of a Delivery Area Surcharge because "[a]s a matter of common sense, the Delivery Area Surcharge arises out [of] Defendant's provision of services: it is part of the cost of using their services"); *see also Thomas v. Cricket Wireless LLC*, 506 F. Supp. 3d 891, 900 (N.D. Cal. 2020) (compelling arbitration of plaintiff's statutory and unjust enrichment claims related to false advertising where arbitration agreement provided for arbitration of "all disputes and claims between" the parties). Accordingly, the Court **GRANTS** the motion to compel Plaintiff's individual claims to arbitration.

### D. The Putative Class Claims Must Be Dismissed

Defendant argues that Plaintiff cannot pursue the putative class claims because the arbitration agreement prohibits her from doing so. Mot. at 24–25. Plaintiff responds that it is premature to decide this issue. Opp. at 21–22. As the Court has already found, the class action bar is mutual, and it is enforceable under the FAA and California law. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524–25 (2018); *Kilgore*, 673 F.3d at 951. Having found that Plaintiff's individual claims must be arbitrated, the Court also finds that her putative class claims must be dismissed. *See Farfan v. SSC Carmichael Operating Co. LP*, No. 18-CV-01472-HSG, 2019 WL 4933577, at *3 (N.D. Cal. Oct. 7, 2019) (applying *Lamps Plus* to compel arbitration of individual claims and dismiss class claims); *see also Cortez v. Cambridge Real Est. Servs., Inc.*, No. 22-CV-07332-HSG, 2023 WL 4534946, at *4 (N.D. Cal. June 16, 2023) ("A plaintiff may not pursue class claims as a representative when they are required to arbitrate their own claims."). Accordingly, the Court **DISMISSES** the putative class claims.

## IV. CONCLUSION

The Court **GRANTS** Defendant's motion to compel arbitration, **DISMISSES** the putative class claims, and **STAYS** the proceedings. Dkt. No. 53. The parties are **DIRECTED** to file a

10

joint status report every 120 days (beginning from the date of this order) discussing the status of the arbitration proceedings.  The Clerk is **DIRECTED** to administratively close the case.

**IT IS SO ORDERED.**

Dated:    5/7/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

11